06-4069-ag
Poole v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

(Submitted: February 5, 2008          Decided: March 27, 2008)

Docket No. 06-4069-ag

- - - - - - - - - - - - - - - - - - - - -
RODWELL ARLIE ANTHONY POOLE,
          Petitioner,

                    v.

MICHAEL B. MUKASEY,[*] Attorney General
of the United States, DEPARTMENT OF
HOMELAND SECURITY, and IMMIGRATION
AND CUSTOMS ENFORCEMENT (ICE),
          Respondents.
- - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, WINTER, and B.D.PARKER, Circuit Judges.

    Petition for review of the August 2, 2006, decision of the Board

of Immigration Appeals dismissing as untimely challenges to an order

of removal without considering a claim for derivative citizenship.

    Dismissed in part and remanded in part.

                         Jennifer Oltarsh, Oltarsh & Associates, P.C.,
                           New York, N.Y., submitted a brief for
                           Petitioner.

_____

    [*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney

General Michael B. Mukasey is automatically substituted for former Attorney

General Alberto R. Gonzales as a respondent in this case.

                     Carol Federight, Senior Litigation Counsel,
                       Peter D. Keisler, Asst. Atty. General, M.
                       Jocelyn Lopez Wright, Asst. Director, Civil
                       Division, Office of Immigration Litigation,
                       United  States  Department  of  Justice,
                       Washington, D.C., submitted a brief for
                       Respondents.

JON O. NEWMAN, Circuit Judge.

   This petition to review a decision of the Board of Immigration
Appeals ("BIA") primarily concerns the proper disposition of the
petitioner's claim for derivative citizenship.  Rodwell Arlie Anthony
Poole, a native and citizen of Guyana, who has been a lawful permanent
resident of the United States since 1976, seeks review of a decision
of the BIA, dismissing as untimely his appeal from an Immigration
Judge's ("IJ") order of removal.  We lack jurisdiction to consider all
of his claims except his claim for derivative citizenship, as to which
we remand.  We therefore dismiss in part and remand in part.

## Background

   Poole was admitted to the United States as a lawful permanent
resident in 1976, at the age of ten, along with his mother. His
parents immigrated from Guyana and never married.  Poole was raised by
his mother through whom he claims derivative citizenship.  She applied
for citizenship in November 1982, when Poole was 16.  Her citizenship
application was granted on November 27, 1984, nine months after

-2-

Poole's eighteenth birthday.[2] Poole has three children, aged nineteen, fourteen, and ten, all of whom are citizens.

Between April 1997 and January 2000, Poole was convicted of several crimes in New York state court including: third-degree misdemeanor assault, second-degree felony assault, first-degree reckless endangerment and third-degree criminal possession of a weapon.

In June 2002, Poole was served with notice to appear in immigration court to answer the charges that he is subject to removal as an alien convicted of an aggravated felony and as an alien convicted for a firearms offense. See 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felon); id. at 1227(a)(2)(C) (firearms offense).

Poole admitted the allegations against him, except for the allegation that he is an alien. He contended that he was entitled to derivative citizenship through his mother, or, alternatively, that he is entitled to be considered a national of the United States on the theory that he would have derived citizenship through his mother but for the delay of the Immigration and Naturalization Service ("INS") in processing her citizenship application.

On May 5, 2006, after a series of hearings in immigration court

_____

[2]Although not relevant to this appeal, Poole's father became a United States citizen on March 22, 1994.

beginning in 2002, the IJ issued a written decision, ruling that Poole is not a citizen or national of the United States and that he is removable as charged and not entitled to any relief. Specifically, the IJ, citing INS v. Miranda, 459 U.S. 14 (1982), ruled that because Poole had not shown that the INS committed "affirmative misconduct" in processing his mother's citizenship application, he could not make a claim under former section 321 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1432(a), that he was entitled to derivative citizenship. The IJ then found that Poole's conviction for second-degree assault was a crime of violence qualifying him as an "aggravated felon," and that the crime was also a "particularly serious crime," thus rendering Poole ineligible for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and the Convention Against Torture ("CAT"). The IJ then denied Poole's remaining claim for deferral of removal under the CAT, noting that nothing in the record supported the conclusion that Poole would be subjected to torture if returned to Guyana. Accordingly, the IJ ordered him removed to Guyana.

Poole had until June 5, 2006, the next business day following the thirtieth day after the immigration judge mailed his decision, to file his appeal with the BIA. See 8 C.F.R. § 1240.15. His appeal was filed on June 7, 2006, two days late. In August 2006, the BIA dismissed Poole's appeal as untimely. The BIA made no reference to Poole's

-4-

claim of derivative citizenship.

## Discussion

Jurisdiction. Our jurisdiction turns on the nature of the claims presented. Poole challenges his removal on the ground that his second-degree assault conviction is not an aggravated felony and because he is a citizen. With respect to a removal order against a non-citizen who is removable by reason of having committed an aggravated felony, we lack jurisdiction unless the petition raises a constitutional claim or a question of law. See 8 U.S.C. § 1252(a)(2)(C), (D); see Pierre v. Gonzales, 502 F.3d 109, 113 (2d Cir. 2007). Thus, except for an obstacle concerning exhaustion of remedies, which we consider below, we would have jurisdiction to resolve the legal issue of whether the crime Poole committed is an aggravated felony. See Blake v. Gonzales, 481 F.3d 152, 155-56 (2d Cir. 2007).

With respect to Poole's claim to derivative citizenship, this too presents an issue of law, over which we retain jurisdiction under section 1252(a)(2)(C). See Ashton v. Gonzales, 431 F.3d 95, 97 (2d Cir. 2005).

Exhaustion of remedies. The Government contends that Poole's appeal of the IJ's decision to the BIA was untimely and that, as a result, Poole failed to exhaust his administrative remedies, thus depriving this court of jurisdiction to review his legal challenge to

-5-

the removal order. Poole responds that the Federal Rules of Civil Procedure provided him with an additional three days to file his appeal to the BIA.

The regulations governing procedures before IJs and the BIA provide that a notice of appeal to the BIA of an IJ's decision "shall be filed directly with the Board . . . within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision." 8 C.F.R. § 1003.38(b). "If the final date for filing falls on a Saturday, Sunday, or legal holiday, [the] appeal time shall be extended to the next business day." Id. The date the BIA received the notice of appeal is the date it is considered filed. Id. at 1003.38(C).

The IJ issued his decision on May 5, 2006. The decision was mailed on that date and stated on its cover that a notice of appeal is due "within 30 calendar days of the date of the mailing of this written decision." Poole thus had until June 5, 2006, to file his appeal. The BIA received Poole's notice of appeal on June 7, 2006, and denied the appeal as untimely. The BIA's order stated that the IJ's decision was final, and that any party wishing to challenge the finding of untimeliness must file a motion to reconsider with the BIA, and that any other motion should be filed with the IJ. Poole did not file any subsequent motions.

Poole presents two arguments in response to the BIA's ruling that

his administrative appeal was untimely. First, he argues that his counsel did not receive the IJ's decision until "almost two weeks later." This assertion, which appears only in Poole's brief to this Court, need not be considered since its factual basis is not in the record. See 8 U.S.C. 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). Moreover, nothing in the record compels the conclusion that the decision was not mailed on May 5, 2006, as would be required to reverse a factual determination made by the BIA as to timeliness. See 8 U.S.C. 1252(b)(4)(A).

Second, Poole claims that the "three-day rule" of Rule 6(e) of the Federal Rule of Civil Procedure 6(e) should apply here. Rule 6(e) provides: "Whenever a party must or may act within a prescribed period after service and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are added after the prescribed period would otherwise expire under subdivision (a)." This issue was never raised before the BIA, and is thus unexhausted and cannot be raised here for the first time. See Lin Zhong v. United States DOJ, 480 F.3d 104, 107 (2d Cir. 2006). Moreover, the Federal Rules of Civil Procedure do not apply to proceedings before the BIA. See Fed. R. Civ. P. 1 ("[t]hese rules govern the procedure in . . . the United States district courts"); Kalejs v. INS, 10 F.3d 441, 447 (7th Cir. 1993) (Federal Rules of Civil Procedure do not apply to deportation proceedings); In re Magana

17 I. & N. Dec. 111, 115 (B.I.A. 1979) (same); <u>In re McNeil</u>, 11 I. & N. Dec. 378, 389 (B.I.A. 1965) (same); <u>see</u> <u>also</u> <u>Zhong Guang Sun v. U.S. Department of Justice</u>, 421 F.3d 105, 108 (2d Cir. 2005) (Federal Rules of Appellate Procedure inapplicable to deportation proceedings). Finally, even if Rule 6(e) of the Civil Rules were applicable, it would add three days only to a time period that begins running on the date of "service," and thus would not extend Poole's 30-day appeal period, which began running on the date of mailing. <u>See</u> <u>Hatchell v. United States</u>, 776 F.2d 244, 246 (9th Cir. 1985).

Poole's objections to the BIA's untimeliness ruling therefore lack merit. As a result his challenge to the removal order in this Court remains unexhausted. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them." <u>Bastek v. Fed. Crop Ins</u>., 145 F.3d 90, 94 (2d Cir. 1998). In particular, the INA's exhaustion requirement constitutes a "clear jurisdictional bar, and admits of no exceptions." <u>Mejia-Ruiz v. INS</u>, 51 F.3d 358, 362 (2d Cir. 1995) (internal quotation marks omitted). Accordingly, Poole's removal and CAT claims are unexhausted, and we lack jurisdiction to consider them.

This Circuit has not expressly considered whether a failure to file a timely appeal with the BIA renders claims unexhausted, but we

-8-

agree with the Sixth and Ninth Circuits that a late appeal to the BIA leaves a petitioner's claim unexhausted, and that a court then lacks jurisdiction to consider the unexhausted claims. See Sswajje v. Ashcroft, 350 F.3d 528, 532 (6th Cir. 2003); Da Cruz v. INS, 4 F.3d 721, 722-23 (9th Cir. 1993).

We must therefore dismiss for lack of jurisdiction all aspects of Poole's petition, except his claim for derivative citizenship, to which we now turn.

Derivative citizenship. Poole's claim to derivative citizenship does not encounter a jurisdictional obstacle for lack of exhaustion. The Executive Branch may remove certain aliens but has no authority to remove citizens. An assertion of United States "citizenship is thus a denial of an essential jurisdiction fact" in a deportation proceeding. Ng Fung Ho v. White, 259 U.S. 276, 284 (1922); Rivera v. Ashcroft, 394 F.3d 1129, 1136 (9th Cir. 2005); see also Frank v. Rogers, 253 F.2d 889, 890 (D.C. Cir. 1958) ("Until the claim of citizenship is resolved, the propriety of the entire proceeding is in doubt."). If the Government's argument that exhaustion is required were correct, "it would be possible to unintentionally relinquish U.S. citizenship . . . . The Constitution does not permit American citizenship to be so easily shed." Rivera, 394 F.3d at 1136. Relinquishing citizenship requires an affirmative act. See Vance v. Terrazas, 444 U.S. 252, 260-61 (1980); see also Trop v. Dulles, 356

U.S. 86, 92 (1958) (plurality opinion) ("citizenship is not a license that expires upon misbehavior."). "[T]he statutory administrative exhaustion requirement of § 1252(d)(1) does not apply" to "a person with a non-frivolous claim to U.S. citizenship." Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005) (internal quotation marks omitted); see also Moussa v. INS, 302 F.3d 823, 825 (8th Cir. 2002) (holding that the exhaustion requirement of subsection 1252(d)(1) applies "only to an 'alien'" "challenging a final order of removal" and not to "'any person.'").

To determine whether an alien obtains derivative citizenship under 8 U.S.C. § 1432(a), the court "appl[ies] the law in effect when [petitioner] fulfilled the last requirement for derivative citizenship." Ashton v. Gonzales, 431 F.3d 95, 97 (2d Cir. 2005). At the time Poole's mother received citizenship in 1984, section 321(a) of the INA provided:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) the naturalization of both parents; or
>
> (2) the naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) the naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) such naturalization takes place while such child is unmarried and under the age of 18 years; and

(5) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause 8 U.S.C. § 1432(1), or the parent naturalized under clause (2) or (3), or thereafter begins to reside permanently in the United States while under the age of 18 years.

8 U.S.C. § 1432(a) (repealed). Subsections 1432(a)(1) and (2) are inapplicable here. Accordingly, the only way Poole can secure derivative citizenship is by showing (1) either (a) that there has been a legal separation of his parents and the parent having legal custody has been naturalized, or (b) that he has been born out of wedlock, his mother has been naturalized, and his paternity has not been established by legitimation; (2) that such naturalization occurred while he was under the age of eighteen; and (3) that he was residing in the United States pursuant to a lawful admission for permanent residence at the time his mother becomes naturalized. See id.

Poole satisfies the second alternative of the first requirement since he was born out of wedlock,[3] his mother was naturalized, and his father never legitimated him.[4] He also satisfies the third requirement

---

[3]The fact that Poole's parents never married supports a finding of a birth out of wedlock.

[4]Legitimacy is determined by the law of the country in which Poole was born, see Wedderburn v. INS, 215 F.3d 795, 797 (7th Cir. 2000)

-11-

since as he was legally residing in this country at the time his mother was naturalized.

Because Poole's only possible claim to derivative citizenship is through the illegitimacy prong of subsection 1432(a)(3), the final inquiry focuses on whether Poole's mother received her citizenship prior to Poole's eighteenth birthday. See 8 U.S.C. § 1432(a)(4). Because Poole's mother was naturalized nine months after Poole's eighteenth birthday he appears to fail to satisfy the timing requirement of subsection 1432(a)(4).

However, there might be some basis for relieving Poole of the requirement that his mother was naturalized prior to his eighteenth birthday. She applied for citizenship when he was 16. The record provides no indication why the Government took two years to process her application. A more expeditious processing, if completed within two years, would have provided Poole with derivative citizenship.

---

(referring to laws of Jamaica, where petitioner was born, to determine petitioner's paternity), which in this case is Guyana. As determined in 2006 by the BIA, under Guyanese law, a father legitimates his illegitimate child only if the father marries the child's mother. In re Rowe, 23 I. & N. Dec. 962, *12-13 (BIA 2006); see also Gorsira v. Loy, 357 F. Supp. 2d 453, 463-64 (D. Conn. 2005) (finding same). Poole's parents never married. Accordingly, under Guyanese law, his father never legitimated him.

-12-

Form N—400 (Application for Naturalization) requires the applicant to provide the names and dates of birth of children.  The Third Circuit, in an unpublished opinion, has accepted the argument that an inexplicable delay on the part of the INS in processing a parent's citizenship application should not defeat a child's claim for derivative citizenship.  See Calix-Chavarria v. AG of the United States, 182 Fed. Appx. 72, 76 (3d Cir. 2006).

In the pending case, the IJ dismissed Poole's derivative citizenship claim by stating, "This court does not believe that the respondent has derived citizenship through parentage for the reasons indicated."  No reason is provided, but perhaps the IJ was referring to his earlier statement that an estoppel against the Government was not available because the INS had not engaged in affirmative misconduct in processing the mother's application.  On appeal, the BIA gave no consideration to the claim for derivative citizenship.

If the equities of the situation are relevant, they appear to favor the exercise of discretion in Poole's favor, despite his criminal offenses.  His mother's application was filed two years before his eighteenth birthday; the INS, alerted to the date when he would turn eighteen, had an opportunity to complete its review in time for him to acquire derivative citizenship; he has three children, aged nineteen, fourteen, and ten, all of whom are citizens residing in this country; and both his parents are citizens residing in this country.

Under all the circumstances, we will remand the case to the BIA for consideration of what relief, if any, might be accorded to Poole with respect to his claim for derivative citizenship. Even if the BIA determines that relief is not available for Poole, the Government might wish to consider the advisability of instituting some procedure whereby the citizenship applications of parents with minor children born abroad are sorted by the children's ages and a priority is given to processing the applications of parents whose children are nearing eighteen at the time of the application.

## Conclusion

For the foregoing reasons, Poole's claim of derivative citizenship is remanded to the BIA, and the remainder of his claims are dismissed for lack of jurisdiction.