**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2425
_____

HENRIZ BRASMIN COLON-CALDERON,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A044-659-339)
Immigration Judge: Honorable John P. Ellington

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2018
Before: VANASKIE, COWEN and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 9, 2018)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Henriz Brasmin Colon-Calderon, a citizen of the Dominican Republic, petitions for review of a final order of removal. For the following reasons, we will deny the petition.

Colon-Calderon was born to alien parents in the Dominican Republic in April 1990. He was admitted to the United States as a conditional resident in June 1994, and adjusted his status to lawful permanent resident in May 2001. In 2015, Colon-Calderon pleaded guilty to possession with intent to distribute cocaine. See 21 U.S.C. § 841(a) and § 841(b)(1)(C). He was sentenced to 21 months of imprisonment.

The Government charged Colon-Calderon with removability for having been convicted of an aggravated felony as defined in Immigration and Nationality Act (INA) § 101(a)(43)(B) [8 U.S.C. § 1101(a)(43)(B)] (illicit trafficking in a controlled substance), INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)], and for having been convicted of a controlled substance offense, INA § 237(a)(2)(B)(i) [8 U.S.C. § 1227(a)(2)(B)(i)]. An Immigration Judge (IJ) concluded that Colon-Calderon was removable as charged; that he was ineligible for asylum, withholding of removal (under both the INA and the Convention Against Torture (CAT)), cancellation of removal, and adjustment of status; and that he was not entitled to deferral of removal under the CAT based on his allegation that he will be "harmed by the corrupt Dominican Police."

On appeal to the Board of Immigration Appeals, Colon-Calderon argued that his conviction did not constitute a "particularly serious crime" and that he obtained derivative United States citizenship from his father, who naturalized in April 2009. The

2

Board rejected these claims, holding that Colon-Calderon failed to overcome the presumption that his drug conviction was a particularly serious crime and concluding that he did not derive citizenship because he was over 18 years of age when his father became a naturalized citizen. Colon-Calderon filed a pro se petition for review of the BIA's decision.

We generally lack jurisdiction to review a final order of removal against a criminal alien, like Colon-Calderon, who is removable for having committed an offense covered in § 237(a)(2). See 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction, however, to review constitutional claims, "pure questions of law," and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005); see also 8 U.S.C. § 1252(a)(2)(D). Here, a liberal construction of Colon-Calderon's pro se brief leads us to conclude that we have jurisdiction over his claim that the IJ failed to "specif[y] any basis" for concluding that he was convicted of a particularly serious crime.[1] See Chong v. INS, 264 F.3d 378, 387 (3d

---

[1] Colon-Calderon's informal brief does not challenge the determinations that: (1) he is removable; (2) that he is not eligible for asylum, cancellation of removal, and adjustment of status; and (3) that he did not qualify for deferral of removal under the CAT. Therefore, those claims have been waived. See Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived). Moreover, because Colon-Calderon did not raise those claims on appeal to the BIA, they have not been exhausted administratively and we would lack jurisdiction to consider them even if he had presented them in his opening brief. See INA § 242(d)(1) [8 U.S.C. § 1252(d)(1)]; Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012) ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."). We also note that although Colon-Calderon argued before the Board that the denial of his derivative citizenship claim violated equal protection, he did

Cir. 2001). Nevertheless, for the reasons discussed below, we conclude that this claim lacks merit.

In In re Y-L, 23 I. & N. Dec. 270 (A.G. 2002), the Attorney General held that drug trafficking crimes presumptively constitute particularly serious crimes, but acknowledged "the possibility of the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances" rebutting that presumption.[2] Id. at 276. To establish such circumstances, Colon-Calderon emphasized that his offense involved a small amount of cocaine with a low monetary value, that no violence or weapons were used, that he cooperated with officials, that he was sentenced to 21 months of imprisonment, and that he had plans to rehabilitate himself through a job and education. The IJ acknowledged these factors but concluded that Colon-Calderon's crime was particularly serious. In support of this determination, the IJ noted that Colon-Calderon was prosecuted and convicted in federal court, that he faced a 20 year prison sentence, and that he was not given any "federal first offender programs or *de minimis* sentencing." Contrary to Colon-Calderon's assertion, this analysis sufficiently explains the IJ's basis

not pursue that claim in his brief. See Bradley, 603 F.3d at 243 n.8.

[2] For this exception to apply, the alien must show, "at a minimum," that each of the following factors is satisfied: (1) "a very small quantity of controlled substance" was at issue; (2) "a very modest amount of money [was] paid for the drugs in the offending transaction"; (3) the alien had only "peripheral involvement" in the offense; (4) no violence or threat of violence (implicit or otherwise) was associated with the offense; (5) the offense did not involve, either directly or indirectly, "organized crime or terrorist organization involvement"; and (6) the offense did not have "any adverse or harmful effect" on juveniles. In re Y-L-, 23 I. & N. Dec. at 276-77.

for concluding that the possession with intent to distribute cocaine conviction was particularly serious.  See Chong, 264 F.3d at 387 (holding that due process was satisfied where agency engaged in an individualized determination based of the facts of the case, "rather than blindly following a categorical rule, i.e., that all drug convictions qualify as 'particularly serious crimes'"); cf. Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (explaining that the agency does not have "to write an exegesis on every contention" raised by the movant).

We also have jurisdiction over Colon-Calderon's claim to derivative citizenship. See Poole v. Mukasey, 522 F.3d 259, 262 (3d Cir. 2008).  Colon-Calderon argued to the Board that he had derived citizenship through his father.  Congress has "exclusive constitutional authority" over naturalization.  INS v. Pangilinan, 486 U.S. 875, 882 (1988).  The INA "confers citizenship on children born outside of the United States to alien parents when certain statutory conditions are met."  Morgan v. Att'y Gen., 432 F.3d 226, 229 (3d Cir. 2005).  In particular, under INA § 320 [8 U.S.C. § 1431], derivative citizenship is automatically granted to children born outside of the United States who have at least one parent who is a citizen of the United States, who are under the age of 18, and who are residing in the United States under the custody of the citizen parent.[3]

---

[3] "[D]erivative citizenship is determined under the law in effect at time the critical events giving rise to eligibility occurred."  Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005).  The critical events "are the date of the child's birth, the time of the child's entry into the United States, and the date of the parent's naturalization."  Morgan, 432 F.3d at 230.  Here, when Colon-Calderon was born and entered the United States, the statute in effect was INA § 321 [8 U.S.C. § 1432].  That section was repealed by the Child

5

There is no dispute that Colon-Calderon was over 18 when his father naturalized. He argues, however, that he derived citizenship because he was under 18 when his father *applied* for naturalization in 2006. In support of this assertion, Colon-Calderon relies on the Child Status Protection Act (CSPA), which provided "age-out" protection for individuals who were children at the time a petition for specified types of relief was filed on their behalf. See Carpio v. Holder, 592 F.3d 1091, 1100 (10th Cir. 2010) (stating that the CSPA "applies to petitioners seeking classification (1) as an immediate relative of a United States citizen; (2) as the child of a lawful permanent resident; (3) as the child of an applicant for employment-based permanent residence; (4) as a diversity immigrant; and (5) as a child accompanying or following to join a refugee or asylum parent." (internal citations omitted)). But the CSPA does not, by its terms, apply to aliens seeking derivative citizenship. See Tista v. Holder, 722 F.3d 1122, 1126 (9th Cir. 2013) ("the CSPA by its plain language applies to a limited number of provisions in the [INA]. It covers certain types of visas (family-based, employment-based, and diversity-based), and applications for refugee status and asylum."). Because we cannot confer citizenship outside the limitations established by Congress, see Pangilinan, 486 U.S. at 884-85, Colon-Calderon's attempt to extend the CSPA must fail.

---

Citizenship Act of 2000 ("CCA"), which took effect on February 27, 2001. Bagot v. Ashcroft, 398 F.3d 252, 257 n.3 (3d Cir. 2005). Thus, when Colon-Calderon's father naturalized in April 2009, another provision, INA § 320 [8 U.S.C. § 1431], applied. Notably, both the current and former versions of the relevant statute require that a child born outside of the United States to alien parents be under 18 years of age at the time his or her parent or parents naturalize. § 320(a)(2); § 321(a)(4).

To the extent that Colon-Calderon invites us to equitably estop the United States Citizenship and Immigration Service (USCIS) from denying the derivative citizenship claim, we decline.  See Pangilinan, 486 U.S. at 885 ("[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations.").  Even if we could apply the traditional requirements for estoppel in this circumstance, Colon-Calderon has not provided a basis for exercising that authority.  In particular, he has not shown affirmative Government misconduct or any other circumstance warranting such relief.  Mudric v. Att'y Gen., 469 F.3d 94, 99 (3d Cir. 2006).

For the foregoing reasons, we will deny the petition for review.